UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN DOE NO. 3, | ) | |
| *Plaintiff*, | ) | C.A. No. 1:24-cv-12153-JEK |
| | ) | |
| VS. | ) | LEAVE TO FILE IN EXCESS GRANTED |
| | ) | ON SEPTEMBER 25, 2024 [ECF NO. 10] |
| CITY OF WOBURN, | ) | |
| *Defendant.* | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT, CITY OF WOBURN, TO CERTIFY QUESTIONS TO THE SUPREME JUDICIAL COURT AND TO DISMISS**

**INTRODUCTION**

In his Complaint, John Doe No. 3 ("Doe") alleges that on some unidentified Saturday sometime in 1996, he was sexually harassed by a former—and now deceased—Woburn Public Schools teacher. This incident was never reported to the Woburn Public Schools, the City of Woburn, or to any police department or other government agency. Approximately twenty-eight years later, Doe filed suit in the Middlesex Superior Court alleging various state and federal statutory and common law claims against the City of Woburn (the "City"), including: negligence under the Massachusetts Tort Claims Act (the "MTCA") (Count I); negligent hiring, training, supervision, and retention under the MTCA (Count II); negligent infliction of emotional distress under the MTCA (Count III); sexual harassment in violation of M.G.L. c. 151C and M.G.L. c. 214, § 1C (Count IV); and violation of Title IX (Count V). The City timely removed the case to this court pursuant to 28 U.S.C. § 1441(a).

Count IV alleging sexual harassment raises two distinct questions that have never been addressed by an appellate court in Massachusetts: (1) whether sovereign immunity has been waived either by M.G.L. c. 151C or M.G.L. c. 214, § 1C; and (2) whether sovereign immunity has been waived for strict liability. Because these two questions remain open under Massachusetts law

and there is no controlling precedent indicating how the Supreme Judicial Court ("SJC") would rule, this Court should certify these two questions to the SJC pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981).[1]

Separately, as explained below, all claims set forth in plaintiff's Complaint should be dismissed because they are time barred, the Complaint fails to plausibly state a claim upon which relief may be granted, Doe failed to comply with the pre-suit presentment requirement of the MTCA, and the City is immune from suit under the doctrine of sovereign immunity.

## FACTUAL ALLEGATIONS[2]

Doe was a student at the Kennedy Middle School in Woburn Public Schools between 1993-1996. [ECF No. 1-2 at ¶ 11]. During this time, William McNeil ("McNeil") was employed as a math teacher at the Kennedy Middle School and allegedly assisted at certain athletic events and programs. [Id. at ¶ 12]. In or around April or May 1996, McNeil allegedly approached Doe about joining the hockey team and putting together a "workout plan" in preparation for high school athletics. [Id. at ¶¶ 14-15]. Around this time, McNeil and Doe allegedly agreed to meet at the Kennedy Middle School on a Saturday to begin the workout plan.[3] [Id.]. McNeil told Doe that he needed to be weighed before and after workouts, that the weighing should occur in McNeil's presence, and that Doe should wear only a towel and underwear. [Id. at ¶ 16]. McNeil allegedly

---

[1]     Available at https://www.mass.gov/supreme-judicial-court-rules/supreme-judicial-court-rule-103-uniform-certification-of-questions-of-law.

[2]     The City disputes many of the allegations in the Complaint, however any well-pleaded factual allegations are presumed true solely for the purposes of this Motion. See, e.g., Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007).

[3]     Nothing in the Complaint alleges that any particular school or City employee was aware of or sanctioned this weekend meeting. Similarly, there are no allegations that any school or City policy or procedure allowed teachers to meet with students on weekends on school property.

pressured Doe to shower in front of him despite Doe's protests. Doe allegedly tried his best to remain out of McNeil's view. [Id. at ¶¶ 17-18].

After showering, McNeil allegedly told Doe that he needed to be weighed again. [Id. at ¶ 19]. During the weighing, McNeil allegedly "manipulated" the scale and told Doe that his wet towel was too heavy and was impacting the scale. [Id. at ¶ 20]. McNeil then "slid his hand down the back of the towel between [Mr. Doe's] buttocks, and then removed the towel and placed it on a nearby cabinet, leaving [Mr. Doe] completely naked . . . [and] hovered over him and continued to manipulate the scale while leaning over his shoulder." [Id.].

The Complaint further alleges that Doe "attempted to avoid remembering the sexual assault" but in October 2021, when he was at the Kennedy Middle School for a Halloween event with his children, Doe "began experiencing an anxiety attack" with symptoms similar to those he experiences 25 years earlier. [Id. at ¶ 21]. In the months following the Halloween event, Doe allegedly "continued to relive the incident" and suffered "repeated flashbacks." [Id. at ¶ 22]. Notably, however, the Complaint *does not* allege that Doe had no prior memory of the alleged 1996 assault or that any of his memories were repressed; indeed, the Complaint goes out of its way to avoid making any such incapacitation allegation. Doe was later diagnosed with PTSD, anxiety, and depression, and is receiving treatment. [Id. at ¶ 23].

The Complaint alleges that other, unidentified people have told Doe—at some unidentified time(s)—that they had similar experiences with McNeil, that these events took place "over a long period of time and were readily observable to other CITY employees." [Id. at ¶¶ 25-26]. However, nothing in the Complaint alleges that these other unidentified persons ever disclosed their experiences to any school or City officials. Likewise, the Complaint does not allege in anything other than a conclusory fashion how the alleged incidents involving other unidentified persons

were readily observable to City employees.  Finally, the Complaint alleges that the City had actual knowledge that McNeil assaulted Doe, though, again, it does not identify any person employed by the City at the time who had such knowledge, how they came to possess such knowledge, or that they failed to take any action. [Id. at ¶ 48].

## STANDARD OF REVIEW

"A federal court, interpreting state law, is not the appropriate place to adopt a novel and expansive view of municipal liability under state law." Kennedy v. Town of Billerica, 617 F.3d 520, 533 (1st Cir. 2010) (declining to extend municipal supervisory liability to the Town "for generalized, free-standing, and unspecified wrongs when no employee or group of employees committed an underlying tort.").[4] Pursuant to S.J.C. Rule 1:03, "a federal court may certify a question of the State's highest court where a case involves questions of state law which may be determinative of the cause of action then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of [the Supreme Judicial Court]." Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50 (1st Cir. 2013). A lack of controlling precedent will be found where "a case presents a close and difficult legal issue such that the course that the state court would take is not reasonably clear." Id. at 51.

This Court is well familiar with the standard of review on a motion to dismiss, so the City will not tarry. This Court "take[s] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

---

[4]    Unless otherwise noted, all internal citations and quotations are omitted.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. However, district courts should "stop short . . . of swallow[ing] the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999) (ellipsis added; other alteration in original). Dismissal is appropriate where a plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008).

## I.    This Court Should Certify Questions Related to Waiver of Sovereign Immunity and Strict Liability to the Supreme Judicial Court of Massachusetts.

As every Court to address these questions has noted, there is no binding authority from a Massachusetts appellate court holding either (1) that a municipality's sovereign immunity has been waived by M.G.L. c. 151C or M.G.L. c. 214, § 1C, or (2) that the standard of liability under such statutes is one of strict liability. Because these questions are unsettled, are pure questions of law, and may be determinative of the cause pending before this Court, the City requests that the Court certify these questions to the SJC.

### A.  The City's Sovereign Immunity Has Not Been Waived.

It is axiomatic that the Commonwealth and its subdivisions (like the City here) are "protected from liability in . . .  civil suit[s] unless [their] sovereign immunity has been waived." Bain v. City of Springfield, 424 Mass. 758, 762 (1997). Stated another way, sovereign immunity applies to bar civil claims against a municipality "*unless* consent to suit has been expressed by the terms of a statute, or appears by necessary implication from them." Id. at 763 (emphasis added). Typically, the "Legislature . . . subject[s] public entities to the terms of a statute by the use of *express language to that effect*." Harrison v. Mass. Bay Trans. Auth., 101 Mass. App. Ct. 659,

664-665 (2022) (emphasis added), *rev. denied*, 491 Mass. 1104 (2023). The dispositive question here is whether sovereign immunity was waived by Chapter 151C. When interpreting statutes to determine whether there has been an express or implied waiver of sovereign immunity, Massachusetts courts apply "stringent" rules of construction. Woodbridge v. Worcester State Hosp., 384 Mass. 38, 42 (1981). "Waiver must be expressed by the terms of a statute, or appear[ ] by necessary implication from them." Brown v. Off. of Comr. of Prob., 475 Mass. 675, 679 (2016) (alteration in original). Waiver by necessary implication is rare and requires "uncommonly forceful language indicating a legislative intent that" the public entity be subject to the specific terms of a statute. Id. (discussing lack of waiver of sovereign immunity to postjudgment interest under Chapter 151B). It is axiomatic that purported waivers of sovereign immunity are construed narrowly and strictly, even where a statute may otherwise be understood more generally to be construed broadly. E.g., Harrison, 101 Mass. App. Ct. at 670–71 ("the general rule requiring employment statutes to be liberally construed, . . . must yield to the more specific rule requiring strict construction of purported waivers of sovereign immunity").

As relevant here, Chapter 151C prohibits sexual harassment "in any program or course of study in any educational institution." M.G.L. c. 151C, § 2(g).[5] An "educational institution" is expressly defined in Chapter 151C as "any institution for instruction or training . . . which accepts applications for admission from the public generally and which is not in its nature distinctly private. . . ." Id. at § 1(b).[6] Thus, to be an educational institution, the entity must *both* accept

---

[5]    Notably, other statutes that waive sovereign immunity invariably use words to the effect of "the Commonwealth and its subdivisions." See, e.g., M.G.L. c. 151B, § 1(1) (defining "person" to include "the commonwealth and all political subdivisions, boards, and commissions thereof."); M.G.L. c. 258, § 1 (defining "public employer" to include "the commonwealth and any county, city, town, educational collaborative, or district").

[6]    The City has not located another Massachusetts statute that employs this definition.

applications from the public generally *and* not be distinctly private. The City does not qualify as an "educational institution" because it decidedly does not "accept applications from the public generally"; rather, it is required by the Massachusetts Constitution to provide a public education to *all* children within its jurisdiction. See Part II, c. 5, § 2 of the Massachusetts Constitution. Statutorily, M.G.L. c. 71, § 1, mandates (subject to exceptions not relevant here) compulsory attendance "at a public day school" in the town or city in which a school-aged child resides. Students have "a right to attend the public schools of the town where he actually resides. . . ." M.G.L. c. 71, § 5. Moreover, Black's Law Dictionary defines "apply" as "to make a formal request or petition . . . for the granting of some favor, or of some rule or order, which is within his or their power of discretion." Black's Law Dictionary 51 (5th ed. 1983). Thus, "apply" clearly contemplates some level of discretion on the part of the recipient of the application to either accept or reject it. Yet a city or town has no such discretion. "Application" is defined as "[t]he act of making a request for something." Black's Law Dictionary 51 (5th ed. 1983). Again, school age children are by law entitled to attend public school; no "formal request" is required. In short, applications are not generally necessary nor required.

To the City's knowledge, there is only one federal court decision that has held that Chapter 151C—which was first enacted in 1949—contains an implicit waiver of sovereign immunity. See Doe v. Fournier, 851 F. Supp. 2d 207, 217 (D. Mass. 2012) (Ponsor, J.), *on reconsideration in part* (Mar. 20, 2012). The City has not found another case that either reinforced Fournier's holding or otherwise addressed sovereign immunity for claims brought under Chapter 151C or Chapter 241, § 1C.[7] With due respect to Judge Ponsor, Fornier is wrongly decided particularly because the

---

[7]     In Turley v. W. Massachusetts Regl. Police Acad., a Massachusetts Superior Court judge held that Chapter 214, § 1C did not waive sovereign immunity against a police academy for monetary damages. No. CV 18-0118-B, 2018 WL 11380716, at *2 (Mass. Super. Nov. 13, 2018) (Wilkins, J.).

decision read the word "generally" out of the statute, ignored the plain meaning of "apply" and "application," and grounded the analysis in two isolated instances in which a public school may accept an "application" from certain individuals—but decidedly not from the public *generally*. Chapter 71, Section 37H(e) only applies where an expelled student moves to a new school district during the period of expulsion and seeks admission to the new school district of residence. M.G.L. c. 71, § 37H(e). This does not apply to the "public generally," but only to expelled or suspended students. Moreover, the new school district does not have discretion to reject an expelled student from admission, rather "the new district of residence *shall* either admit the student to its schools or provide educational services to the student in an education service plan, under section 21 of chapter 76." Id. (emphasis added). Similarly, Chapter 76, Section 12B(d)[8] only applies where a non-resident student seeks to attend an out-of-residency school district. M.G.L. c. 76, § 12B(d). This does not apply to the "public generally," but only to non-resident students. Moreover, like expelled students, the out-of-residency school district does not have discretion to deny an out-of-residency placement: "[e]ach city, town or regional school district *shall* enroll non-resident students at the school of such non-resident student's choice; provided, however, that such receiving district has seats available as stated in said report. . . ." M.G.L. c. 76, § 12B(d). Where there is no discretion to approve or deny a non-resident student's request, the common definition of "apply" and "application" are inapt. Applying these two statutes to mean that all public schools accept applications from the public generally reads the modifier "generally" out of Section 151C . Courts do not re-write statues by subtraction and must give effect to all words in the statute. See Roberts v. Enter. Rent-A-Car Co. of Bos., 438 Mass. 187, 190-191 (2002); see also A. Scalia & B. Gardner,

---

[8]     Fornier cites to M.G.L. c. 76, § 15(d), which does not exist. Chapter 76, Section 15 addresses mandatory vaccinations and immunizations, and Chapter 76, Section 15D addresses meningococcal disease and college student immunizations. The City presumes that Judge Ponsor intended to cite to M.G.L. c. 76, § 12B(d).

Reading Law: The Interpretation of Legal Texts 174 (2012) (it is not a court's "function to revise [a statute] by subtraction. . . .").

Moreover, where the Legislature wants to refer to *public* schools it does so clearly by calling them just that: public schools. See, e.g., M.G.L. c. 71, § 1 ("It is the intention of the general court, subject to appropriation, to assure fair and adequate minimum per student funding for *public schools* in the commonwealth by defining a foundation budget and a standard of local funding effort applicable to every city and town in the commonwealth.") (emphasis added), § 3 (requiring so-called illiterate minors to "attend some *public evening school* . . . for the whole time during which the *public evening schools* are in session, unless the minor attends a *public day school*, or a *private school* approved as provided in section one by the school committee") (emphasis added), § 35 ("The board of education shall award grants to exemplary *public schools* and to cooperating *public or private institutions* of higher education in the commonwealth to establish collaborative programs for the purpose of fostering improved teacher training and professional development.") (emphasis added), § 39 ("No *public school* committee or official shall" ask questions about religious or political beliefs in an application for employment") (emphasis added); M.G.L. c. 272, § 40A (making it a criminal offense to possess alcohol "in any *public school building*, or on any premises used for *public school purposes* and under the charge of a school committee or other public board or officer.") (emphasis added).[9]

Chapter 214, Section 1C likewise contains no words clearly evidencing a legislative intent to waive sovereign immunity; it merely expands the class of persons who can invoke Chapter 151B

---

[9] This is precisely why the Appeals Court refused to find a waiver of sovereign immunity under the anti-retaliation provision of the Wage Act, which at times referred to both *public* employers and employers. See <u>Harrison</u>, 101 Mass. App. Ct. at 664-665.

and 151C. It does so by incorporating specifically the definition of sexual harassment from Chapter 151B and Chapter 151C.

In sum, neither Chapter 151C nor Chapter 214, Section 1C expressly or by necessary implication waive the City's sovereign immunity.

### B.  Neither Chapter 151C nor Chapter 214, § 1C Create Strict Liability.

Regardless of whether sovereign immunity has been waived generally, it is far from clear that the waiver extends to strict liability. It is well established that strict liability does not typically apply to the Commonwealth or its subdivisions. See, e.g., Audette v. Com., 63 Mass. App. Ct. 727, 735 (2005) (sovereign immunity precluded imposing strict liability under so-called dog bite statute; claim instead must be brought pursuant to the MTCA); Martini v. City of Pittsfield, 2015 WL 1476768, at *13 (D. Mass. 2015) (Mastroianni, J.) (no strict liability for the City's "abnormally dangerous activity" of storing water behind a damn because "the MTCA requires some negligent or wrongful conduct for a public employer to be held liable").

Massachusetts courts have not definitively concluded what standard applies to a student's allegations of sexual harassment by a teacher: strict liability, deliberate indifference similar to that applicable to Title IX cases, or some other standard.[10] See, e.g., Morrison v. Northern Essex Commty. Coll., 56 Mass. App. Ct. 784, 780 n.17 (2002) (expressly reserving on the question).

---

[10]    Three trial court decisions (two from the federal court and one from the Superior Court) have decided that the standard is strict liability. See Doe v. Bradshaw, 203 F. Supp.3d 168 (D. Mass. 2016) (Woodlock, J.) ("Bradshaw II"); Doe1 v. City of Holyoke, -- F.3d --, 2024 WL 1257519 (D. Mass. Mar. 25, 2024) (Mastroianni, J.) ("Holyoke":); Doe on Behalf of Doe v. Town of Hopkinton, 34 Mass. L. Rptr. 137, 2017 WL 1553440, at *3–4 (Mar. 7, 2017) (Kazanjian, J.) ("Hopkinton"). All three decisions reject imposing the Title IX "deliberate indifference" standard. Bradshaw II and Hopkinton both acknowledge that there is no language in Chapter 151C or Chapter 214, § 1C creating strict liability. Bradshaw II, 203 F. Supp. 3d at 189 ("However, strict liability was found [under c. 151B] based on statutory language present in 151B but not 151C."); Hopkinton, 2017 WL 1553440, at *4 (acknowledging that "the basis for strict vicarious liability under 151B, at least in part, is grounded in the statutory language" and "G.L.c. 151C, § 2, does not contain similar language"). Holyoke does not contain any analysis of deliberate indifferent or strict liability, and instead simply holds that "under § 1C . . . an employer is strictly liable for a teacher's misconduct towards a student." Holyoke, 2024 WL 1257519, at *10.

Although the <u>Morrison</u> Court declined to lay out the standard for liability under Chapter 151C, it expressed comfort in applying the same standard under both Chapter 151C and Title IX when it reversed summary judgment granted to the defendant below, stating: "plaintiffs have raised a genuine issue of material fact as to whether the college acted with *deliberate indifference*." <u>Id</u>. at 800 (emphasis added). For at least the following four reasons, the standard of liability cannot be strict.

*First*, there is no language in either Chapter 151C or Chapter 214, §1C that expressly waives sovereign immunity or creates strict liability. Had the Legislature intended to impose strict liability under Chapter 214, §1C, it would have done so explicitly. Assuming *arguendo* that the Massachusetts Legislature abrogated sovereign immunity when it passed Chapters 151A-C, it did not expressly state that the Commonwealth and its political subdivisions would be *strictly vicariously liable* under these provisions. Along these lines, in <u>College-Town</u>, the SJC, in reliance on the express and specific language of Chapter 151B, held employers strictly liable under Chapter 151B for harassment or abuse perpetrated by supervisory employees. <u>College-Town v. MCAD</u>, 400 Mass. 156, 162 (1987). Speaking of the desire to eliminate "barriers" to "full participation in the work place," the SJC specifically noted: "Supervisors who create a sexually harassing work environment present a serious barrier to that goal." <u>Id</u>. at 162. While a "supervisor" may be an agent of an employer for purposes of assessing liability under Chapter 151B, the SJC has not extended such potential liability to any and all "agents" of an employer.[11] Chapter 151C, by

---

[11]    Conversely, as the SJC noted in the <u>Fells Acres</u> case, "[t]he fact alone that the corporation's officers and shareholders committed intentional torts would not be sufficient to warrant imputing their expectations or intentions to Fells Acres." <u>Worcester Ins. Co. v. Fells Acres Day School, Inc</u>., 408 Mass. 393, 409 (1990) (declining to apply vicarious liability under traditional concepts to Day School for assaults committed by staff members against minor students). Although <u>Fells Acres</u> did not involve Chapter 214, § 1C, the allegations of abuse adumbrate those made by Doe here and, moreover, involved multiple claims of abuse of children over an extended period of time. Still, the SJC declined to hold the day-care center corporation

contrast, does not contain this expansive language. The Legislature could have included such language in Chapter 151C had it intended to include "agents"; its absence is some evidence of the Legislature's intent to limit the expansiveness of Chapter 151C, especially where all three sections of Chapter 151 were passed at the same time. See, e.g., Martha's Vineyard Land Bank Commn. v. Bd. of Assessors of W. Tisbury, 62 Mass. App. Ct. 25, 30 (2005) ("related statutes are to be construed together to produce a harmonious, systemic whole and that differences in language between such statutes must reflect different intended meanings.").

The City pauses to make a rather critical point: Only rarely has the SJC imposed strict liability against a public entity. In Fells Acres, the SJC noted that outside of the standard which applies to common carriers and innkeepers, "we are aware of no cases imposing carrier-type liability on an enterprise such as a group day-care center." 408 Mass. at 406-407. Instead, the SJC adopted the standard for determining *vicarious* liability based upon whether an agent's conduct is within the scope of their employment as set forth in the Restatement (Second) of Agency, §228. Id.; see also Wang Labs, Inc. v. Bus Incentives, Inc., 398 Mass. 854, 859 (1986) (adopting Restatement for purposes of private employer liability under Chapter 93A); cf. Audette, 63 Mass. App. Ct. at 735 (Commonwealth held immune from imposition of strict liability under M.G.L. c. 140, §155 (the Dog Bite Statute), absent waiver of sovereign immunity by express statutory consent or necessary implication); Martini, 2015 WL 1476768, at *13 (no strict liability for common law claim of "abnormally dangerous activity").

*Second*, an employee who intentionally engages in sexual misconduct is acting outside the scope of his employment at the time of such misconduct. See, e.g., Doe v. Dubeck, 2006 WL 1704261, at *2 (D. Mass. June 19, 2006) (Zobel, J.) ("Sexual misconduct by a teacher clearly falls

---

strictly liable for the acts of abuse allegedly committed by the Amiraults, who were the *directors, officers and shareholders* of Fells Acres Day School, Inc.

outside the scope of employment" for purposes of the MTCA).  In <u>Berry v. Commerce Ins. Co.</u>, the SJC instructed that, in determining whether an employee's conduct falls within the scope of employment, a court must consider three factors: "(1) whether the conduct in question is of the kind the employee is hired to perform; (2) whether it occurs within authorized time and space limits; and (3) whether it is motivated, at least in part, by a purpose to serve the employer." 488 Mass. 633, 638 (2021).  Only if all three factors are met will an employee's conduct fall within the scope of her employment.

McNeil's harassment of Doe, as alleged, was not intended to benefit the City or its School Committee.  Indeed, the alleged harassment would be in violation not only of numerous City policies but also Massachusetts law. Although an employee may, in certain circumstances, engage in criminal conduct which, arguably, is committed on behalf of his employer, *e.g.*, bribing a foreign official to gain a valuable contract in violation of the Foreign Corrupt Practices Act, this is clearly not one of those cases.[12] The City submits that McNeil's conduct, as alleged, was clearly outside the scope of his employment as a matter of law and, hence, the City should not be held  vicariously liable—strictly or otherwise—for his alleged conduct. See, e.g., <u>Doe v. Old Rochester Reg'l Sch. Dist.</u>, 56 F. Supp. 2d 114, 121 (D. Mass. 1999) (acts of rape and indecent assault and battery by teacher and coach on female student held outside the scope of his  employment); <u>Canty v. Old</u>

---

[12]    Indeed, the SJC in <u>Berry</u> cited a long list of tortious conduct committed in connection with work that would not be within the scope of employment: "<u>Lev v. Beverly Enters.–Mass., Inc</u>., 457 Mass. 234, 239303 (2010) (nursing home chef was not acting within scope of his employment where he drove home intoxicated from work meeting during which he consumed alcohol and then caused accident); <u>Clickner [v. City of Lowell]</u>, 422 Mass. [539,] 543-544 [1996] (officer who became intoxicated during golf outing was not acting within scope of employment even though he was answering work-related telephone *638 call at time he crashed town-owned vehicle into plaintiffs); . . .  <u>Merlonghi</u> v. <u>United States</u>, 620 F.3d 50, 56 (1st Cir. 2010) (computer forensics specialist employed to aid in criminal investigations acted in furtherance of his own agenda and not within scope of employment when, on his way home from work, he engaged in car chase, unholstered his gun, made threatening gestures, and drove in dangerous manner, striking motorcyclist with government-owned vehicle issued to specialist to permit him to respond efficiently to emergencies)." <u>Berry</u>, 488 Mass. at 637-638.

Rochester Reg'l Sch. Dist., 54 F. Supp. 2d 66, 71 (D. Mass. 1999) (rape by athletic coach held outside the scope of his employment); Armstrong, 938 F. Supp. at 1029–30 (sexual assault by music teacher while driving a vehicle registered to the city and while "on call" held outside the scope of his employment); Petrell v. Shaw, 453 Mass. 377, 384 (2009) (sexual relationship between adult parishioner and parish rector was "clearly" not with the scope of the rector's employment, precluding vicarious liability of church diocese and three bishops, for rector's alleged tortious conduct); Doe v. Purity Supreme, Inc., 422 Mass. 563, 568 (affirming summary judgment in favor of employer on vicarious liability claim where assistant store manager's rape and sexual assault did not serve the interests of his employer).

*Fourth*, as a matter of public policy, the imposition of strict vicarious liability for the sexual harassment of students simply places too great a burden on public schools. Such is epitomized by this case; an allegations almost three decades old against a deceased former teacher with no documented history of misconduct and the complete absence of any notice or actual knowledge to the City. If Title IX and Chapter 214, Section 1C are indeed companion remedies designed to afford relief to victims of sexual harassment in education, the standards of liability under both statutes should be comparable, not polar opposites.

For the above reasons, the City submits that the standard of liability for a claim brought under Chapter 151C or Chapter 214, § 1C, should they apply to public schools, either be the same deliberate indifference standard applicable under Title IX or "knew or should have known" about conduct committed by an employee within the scope of employment.

### C.  Certification is Appropriate Under These Circumstances.

Given the profound and far-reaching impact of these trial-level decisions on future civil rights actions which include a Chapter 214, §1C claim, and on municipal coffers, the City submits

that it would be prudent for the Court to certify the following two questions to the Supreme Judicial Court:

1) Whether M.G.L. c. 151C or M.G.L. c. 214, § 1C waive sovereign immunity of a public school.

2) If sovereign immunity has been waived, what is the standard of liability for a claim brought under M.G.L. c. 151C or M.G.L. c. 214, § 1C.

## II.  <u>Sexual Harassment under Federal and State Law (Counts IV & V)</u>.

Count V of the Complaint alleges a single claim under federal law for violation of Title IX. Count V should be dismissed because it is time-barred, the Complaint fails to plausibly allege deliberate indifference, and emotional distress damages are non-compensable under Title IX. Because Count IV is also time-barred by a three-year statute of limitations, the City addresses Count IV out of turn in this section.

### A.  **Counts IV & V are Barred by their Respective Statutes of Limitations**.

Title IX does not have its own statute of limitations; instead, it borrows the most analogous state limitations period. See, e.g., <u>Goodman v. Lukens Steel Company</u>, 482 U.S. 656, 660 (1987); accord <u>King-White v. Humble Indep. Sch. Dist.</u>, 803 F.3d 754, 759 (5th Cir. 2015) ("every other circuit to have considered the matter in a published opinion has concluded that Title IX is subject to the same limitations period as § 1983"). As relevant here, Massachusetts has two statutes of limitations for personal injuries: a three-year "residual" statute of limitations for personal injury actions under M.G.L. c. 260, § 2A, and 35-year statutes of limitations for personal injuries arising from sexual abuse under M.G.L. c. 260, §§ 4C & 4C½. Pursuant to <u>Goodman</u>, the residual three-year statute of limitations applies to Doe's Title IX claim. See, e.g., <u>Doe v. Town of Bourne</u>, No. CIV.A.02-11363-DPW, 2004 WL 1212075, at *11 (D. Mass. May 28, 2004) (Woodlock, J.)

(applying a three-year statute of limitations based on Massachusetts state law).[13] Similarly, Count IV alleging sexual harassment in violation of Chapter 151C and Section 1C is subject to a three-year statute of limitations. M.G.L. c. 214, § 1C ("Any such action shall be commenced in the superior court within the time allowed by said section 9 of said chapter 151B."); M.G.L. c. 151B, § 9, par. 2 (setting forth three-year statute of limitations).

What remains is to determine when the claims accrued. While tolling principles are borrowed from state law, a Title IX claim's accrual is prescribed by federal law and commences when a plaintiff knows, or has reason to know, of the injury on which the action is based. See, e.g., Doe v. Town of Bourne, No. CIV.A.02-11363-DPW, 2004 WL 1212075, at *11 (D. Mass. May 28, 2004) (discussing Section 1983 and Title IX claims) (Woodlock, J.); Doe v. Lincoln-Sudbury Regl. Sch. Comm., No. CV 20-11564-FDS, 2021 WL 3847985, at *6 (D. Mass. Aug. 27, 2021) (Saylor, C.J.) (same). "Under Massachusetts law, if a person entitled to bring a cause of action is younger than 18 years old when that action accrues, the limitations period is tolled until he reaches

---

[13]     This interpretation has been adopted by four Circuit Courts of Appeal and at least three federal District Courts when deciding between a shorter residual statute of limitations and a longer statute of limitations applicable to sexual abuse of a minor. See, e.g., King-White, 803 F.3d at 759 (applying Texas's two-year residual statute of limitations to Section 1983 and Title IX claims rather than thirty-year statute of limitations applicable to sexual assault against a child); Woods v. Illinois Dept. of Child. & Fam. Servs., 710 F.3d 762, 766 (7th Cir. 2013) (applying Illinois's two-year residual statute of limitations to Section 1983 claim rather than twenty-year statute of limitations applicable to sexual assault against a child); Stanley v. Trustees of California State Univ., 433 F.3d 1129, 1133 (9th Cir. 2006) (applying California's then-existing one-year residual statute of limitations to Title IX claim rather than the then-existing two-year statute of limitations applicable to suits brought against a public entity); Blake v. Dickason, 997 F.2d 749, 750–51 (10th Cir. 1993) (applying Colorado's two-year residual statute of limitations to Section 1983 claim rather than six-year statute of limitations applicable to sexual assault against a child); Gavin v. Bd. of Educ., S. Orange-Maplewood Sch. Dist., No. CV2009191KMJSA, 2021 WL 1050364, at *5 (D.N.J. Mar. 18, 2021) (McNulty, J.) (applying New Jersey's two-year residual statute of limitations to Section 1983 and Title IX claims rather than thirty-seven-year statute of limitations applicable to sexual assault against a child); Forrester v. Clarenceville Sch. Dist., No. 20-12727, 2021 WL 1812700, at *10 (E.D. Mich. May 6, 2021) (Clehland, J.) (applying Michigan's three-year residual statute of limitations to Section 1983 and Title IX claims rather than ten-year statute of limitations applicable to sexual assault against a child); Szymanski v. Davidson, No. 4:09-CV-062, 2011 WL 5593134, at *5 (D.N.D. Nov. 17, 2011) (Hovland, J.) (applying North Dakota's six-year residual statute of limitations to Section 1983 claim rather than 2-year statute of limitations applicable to wrongful death claim).

18." <u>Doe</u>, 2021 WL 3847985, at *6 (citing M.G.L. c. 260, § 7 and <u>Pettengill v. Curtis</u>, 584 F. Supp. 2d 348, 364 (D. Mass. 2008)). Thus, both Count IV and V accrue at the time that Doe became aware of his injury, and the accrual is tolled until Doe turned 18.

Doe was certainly aware of the injury that serves as a basis for this claim: he was present when the alleged sexual harassment occurred. The Complaint sets forth in detail that Doe knew at the time the alleged sexual harassment occurred that McNeil's actions were inappropriate and caused him harm: Doe alleges that he repeatedly expressed not wanting to shower at the school, did not want to shower in front of McNeil, and attempted to remain out of McNeil's view. [<u>ECF No. 1-2 at ¶¶ 18-20</u>]. Moreover, the Complaint alleges that Doe "*attempted to avoid* remembering" the alleged sexual harassment, but it pointedly does not allege that Doe could not remember it, that he repressed memory of it, or that was unaware that McNeil's conduct caused him harm. Importantly, "[t]he discovery rule does not require that a plaintiff know the specific details pertaining to an alleged harm. . . . Critically, knowledge of every fact necessary to prevail on the claim is not required to put the plaintiff on inquiry notice and trigger the accrual period." <u>Epstein v. CR Bard, Inc</u>., 460 F.3d 183, 188 (1st. Cir.2006).

Thus, based on the allegations in the Complaint, Doe's Title IX and Chapter 214, § 1C claims accrued in 1996 at the time of the alleged sexual harassment. Because Doe was a minor at the time of the alleged sexual harassment, the three-year statute of limitations is tolled until he reached the age of majority. See generally M.G.L. c. 260, § 7. The Complaint alleges that Doe was thirteen (13) years old in March/April 1996, [<u>ECF No. 1-2 at ¶ 13</u>], meaning the three-year statute of limitations would be tolled until March/April 2001, and would expire in March/April 2004. The Complaint was not filed until June 6, 2024, over twenty (20) years later. As such, Doe's claim for

violations of c. 214, § 1C (Count IV) and Title IX (Count V) are time barred and should be dismissed with prejudice.

> **B. The Complaint Fails to Adequately Plead Deliberate Indifference for Purposes of a Title IX Claim**.

In order to demonstrate liability under Title IX, Doe must show "(1) that [he] was a student, who was (2) subjected to harassment (3) based upon sex; (4) that the harassment was sufficiently severe and pervasive to create an abusive educational environment; and (5) that a cognizable basis for institutional liability exists." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 66 (1st Cir. 2002). "To satisfy the fifth part of that standard, a plaintiff must show that a school official authorized to take corrective action had 'actual knowledge' of the sexual harassment and either failed to act or exhibited 'deliberate indifference' to it." Doe v. Emerson Coll., 271 F. Supp. 3d 337, 354 (D. Mass. 2017) (Saylor, J.).

Deliberate indifference is "'a stringent standard of fault, requiring proof that a municipal actor disregarded a *known or obvious* consequence of his action' or inaction." Porto v. Town of Tewksbury, 488 F.3d 67, 73 (1st Cir. 2007) (emphasis added). "[A] claim that the school system could or should have done more is insufficient to establish deliberate indifference." Id. For purposes of this standard, a school district's actions will be considered "deliberately indifferent" "only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 648 (1999). It "is not a mere 'reasonableness' standard. . . ." Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 (2d Cir. 1999), quoting Davis, 526 U.S. at 649. Rather, the "ultimate inquiry" is one of discriminatory purpose on the part of the defendant itself. Gant, 195 F.3d at 141. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." Doe v. Dallas Ind. Sch. Dist., 153 F.3d 211, 219 (5th Cir. 1998). See

Porto, 488 F.3d at 73 ("claim that school system could or should have done more is insufficient to establish deliberate indifference. . . ."). Knowledge, even "[a]ctual knowledge after the fact . . . cannot support deliberate indifference toward sexual harassment already past." Bradshaw II, 203 F. Supp. at 186 (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291 (1998)).

Here, the Complaint is noticeably bereft of anything approaching plausible allegations that any administrator with the authority to take corrective action had actual knowledge of any alleged sexual harassment of Doe by McNeil. To the extent that Doe argues that the City should have known because McNeil had some sort of negative reputation among students, this is not enough. "In the absence of any *direct complaints made to school officials*, the mere floating around of unsubstantiated rumors regarding a particular employee—particularly in the high school setting, which is notoriously rife with adolescent gossip—does not constitute the kind of notice for which a school district can be held liable." Johnson v. Elk Lake School Dist., 283 F.3d 138, 144 n. 1 (3d Cir. 2002) (emphasis added).

Thus, the Complaint fails to plausibly allege deliberate indifference. See Santiago v. Puerto Rico, 655 F.3d 61, 74 (1st Cir. 2011) (affirming dismissal at pleadings stage where complaint failed to adequately allege that school or its principal had either actual knowledge of or the authority to take corrective action against bus driver who allegedly sexually assaulted a special-needs student); StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. of Tech., -- F.Supp. 3d --, No. CV 24-10577-RGS, 2024 WL 3596916, at *5 (D. Mass. July 30, 2024) (Stearns, J.) (granting motion to dismiss Title IX claim for failure to adequately allege deliberate indifference); Doe v. Wentworth Inst. of Tech., Inc., No. 1:21-CV-10840-IT, 2022 WL 1912883, at *5 (D. Mass. June 3, 2022) (Talwani, J.) (same). Count V should be dismissed with prejudice.

**C. The Plaintiff Cannot Recover Emotional Distress Damages**.

Finally, to the extent Count V seeks recovery of emotional distress damages, this form of relief is foreclosed by the Supreme Court's recent decision in <u>Cummings v. Premier Rehab Keller, P.L.L.C.</u>, which held that "emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes" such as Title IX. 596 U.S. 212, 222 (2022). Though <u>Cummings</u> addressed claims brought under the Rehabilitation Act and the Patient Protection and Affordable Care Act, the Supreme Court expressly referenced Title VI and Title IX as the other two Spending Clause statutes to which its analysis could apply. 596 U.S. at 217-218. Recently, a court in this District applied <u>Cummings</u> to a Title IX claim and granted summary judgment to the extent it sought emotional distress damages. See <u>Doe v. Town of N. Andover</u>, No. 1:20-CV-10310-IT, 2023 WL 3481494, at *11 (D. Mass. May 16, 2023) (Talwani, J.) (applying <u>Cummings</u> to Title IX claims because there is "no basis to treat Title IX differently than the Rehabilitation Act and the ACA"). Thus, to the extent that Count V seeks recovery of emotional distress damages, it should be dismissed with prejudice.

**III.  Counts I-III Should be Dismissed because Doe Failed to Present, they are Barred by Sovereign Immunity, and the Complaint Fails to State a Claim upon which Relief May be Granted**.

Counts I-III allege various forms of negligence against the City. The MTCA provides the exclusive remedy for tort claims against public employers for personal injuries or property damage allegedly caused by the negligent or wrongful acts of its employees. A "public employer," within the meaning of the MTCA, is defined as "the commonwealth and any county, city, town, educational collaborative, or district." <u>Id</u>. at § 1. While the MTCA constitutes a limited abrogation of sovereign immunity, it "is not a blanket waiver of protection." <u>Doe v. Massachusetts Trial Ct</u>., 494 Mass. 408, 411 (2024). To the contrary, Section 10 of the MTCA "specifically exempts certain

categories of conduct that continue to enjoy the protection of sovereign immunity." Shapiro v. City of Worcester, 464 Mass. 261, 270 (2013).

### A. Counts I-III Should be Dismissed Because Doe Failed to Comply with the MTCA's Presentment Requirement.

As a prerequisite or condition precedent to bringing an action for negligence against a town under the MTCA, a plaintiff must first make written presentment of their claim in compliance with M.G.L. c. 258, § 4. Wilson v. Town of Mendon, 294 F.3d 1, 5 (1st Cir. 2002); Vasys v. Metropolitan Dist. Commn., 387 Mass. 51, 55-56 (1982); Pruner v. Clerk of the Superior Court, 382 Mass. 309, 315 (1981). Section 4 states in relevant part that:

> A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose.

A plaintiff must make presentment "in strict compliance" with the statute. Harrington v. City of Attleboro, 172 F. Supp. 3d 337, 347 (D. Mass. 2016) (Casper, J.). The claim must be presented within "'two years after the date upon which the cause of action arose.'" Wilson v. Town of Mendon, 294 F.3d 1, 5 n.11 (1st Cir. 2002) (quoting M.G.L. c. 258, § 4). Notably, the statutory discovery rule applicable to minors, *i.e.,* M.G.L. c. 260, § 7, does not toll the two-year presentment period. E.g., George v. Town of Saugus, 394 Mass. 40, 44 (1985). Here, the Complaint fails to allege that Doe complied with the pre-suit presentment requirement, does not attach a copy of a presentment letter, and does not allege compliance with all conditions precedent. Counts I-III should therefore be dismissed.

No doubt, Doe will argue that the MTCA was amended in 2014 to no longer require presentment of claims arising from alleged sexual abuse of minors. But this argument overlooks the fact that the amendment relating to presentment is not, by its terms, retroactive. In 2014, the Massachusetts Legislature enacted numerous amendments to several statutes covering claims

relating to the sexual abuse of minors. See St. 2014, c. 145, §§ 1 *et seq.* (the "2014 amendments").[14] As relevant here, Section 1 of the 2014 amendments modified Section 4 of the MTCA to no longer require presentment of claims arising from alleged sexual abuse of minors. See St. 2014, c. 145, § 1.[15]

However, the Massachusetts Legislature expressly made only certain provisions of the 2014 amendments retroactive. Pursuant to its plain terms, Section 8[16] of the 2014 amendments made only clause (ii) of M.G.L. c. 260, § 4C½[17] and Sections 4-6 of St. 2014, c. 145[18] retroactive. Notably, nothing in Section 8—or any other section of the 2014 amendments—speaks to the retroactivity of Section 1, which both extended the statute of limitations from 3 to 35 years for claims brought under the MTCA and struck the presentment requirement for claims arising from alleged sexual abuse of a minor. As a general rule, all statutes are prospective. See, e.g., Fed. Nat.

---

[14]    For this Court's convenience, a full copy of the 2014 amendments is attached hereto as Exhibit 1.

[15]    "Section 4 of chapter 258 of the General Laws, as appearing in the 2012 Official Edition, is hereby amended by" providing "that a civil action against a public employer which relates to the sexual abuse of a minor[] . . . shall not require presentment of such claim pursuant to this section."

[16]    "Clause (i) of section 4C½ of chapter 260 of the General Laws shall be limited to all claims arising out of or based upon acts alleged to have caused an injury or condition to a minor which first occurred after the effective date of this act.  Clause (ii) of said section 4C½ of said chapter 260 and sections 4 to 6, inclusive, of this act shall apply regardless of when any such action or claim shall have accrued or been filed and regardless of whether it may have lapsed or otherwise be barred by time under the law of the commonwealth."

[17]    Clause (ii) of M.G.L. c. 260, § 4C½ created two alternative statutes of limitations applicable to the claims for negligent supervision causing or contributing to the sexual abuse of a minor. Clause (ii) provides a that a claim may be brought within 7-years "of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by such act. . . ."

[18]    Section 4 of St. 2014, c. 145 amended M.G.L. c. 260, § 4C to broaden its scope from actions for "assault and battery" to "actions of torts[.]"

Section 5 of St. 2014, c. 145 amended M.G.L. c. 260, § 4C to change the statute of limitations from three years to "35 years of the acts alleged to have caused an injury or condition. . . ."

Section 6 of St. 2014, c. 145 amended M.G.L. c. 260, § 4C to change the alternative statute of limitations from 3 years to "7 years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by said act."

Mortg. Assn. v. Nunez, 460 Mass. 511, 516 (2011) (and cases cited); Sliney v. Previte, 473 Mass. 283, 288 (2015). Where the Legislature expressly made only certain provisions of the 2014 amendments retroactive, the general rule militates the conclusion that Section 1 is prospective only.[19] As such, Section 1's striking of the presentment requirement for claims arising from alleged sexual abuse of minors only applies to claims which arose on or after the effective date of the amendment, *i.e.*, June 26, 2014.

Beyond the 2014 amendment's plain text, this interpretation makes sound policy sense. One of the dual purposes of the presentment requirement is "to preserve the stability and effectiveness of government by providing a mechanism which will result in payment of only those claims against governmental entities which are valid, in amounts which are reasonable and not inflated." Drake v. Town of Leicester, 484 Mass. 198, 200 (2020) (quotation omitted). "The presentment requirement furthers the [MTCA's] second purpose by providing the Commonwealth and other public employers with the opportunity to investigate and settle claims and to prevent future claims through notice to executive officers." Id. at 201 (quotations omitted). Removing the presentment requirement retroactively completely undercuts—if not eviscerates—a core purpose of the MTCA generally for cases reaching back decades. A better reading of the 2014 amendments is that the Massachusetts Legislature struck an appropriate balance between public safety and preserving the stability and effectiveness of government by creating new, retroactive statutes of limitations that greatly expand the class of persons who can sue for sexual abuse of minors, while making removal of the presentment requirement prospective only.

---

[19]    For example, this Court has previously noted that the "thirty-five year statute of limitations for 'action[s] of tort alleging that the defendant negligently supervised a person who sexually abused a minor or that the defendant's conduct caused or contributed to the sexual abuse of a minor by another person,' Mass. Gen. Laws ch. 260, § 4C ½, does not apply because, unlike the thirty-five year period in § 4C, it was given only prospective effect when adopted in 2014." Malouf v. Benson, 2018 WL 10155427, at *3 (D. Mass. Aug. 23, 2018) (Sorokin, J.) (alteration in original).

To the extent that Doe would rely on Magistrate Judge Cabell's decision in <u>Lee v. City of Boston</u>, 2016 WL 11372334 (D. Mass. Feb. 1, 2016), the City states, respectfully, that <u>Lee</u> was wrongly decided. In particular, <u>Lee</u> did not engage in any analysis of the Legislature's specified intent to only make parts of the 2014 amendments retroactive or attempt to divine whether the Legislature had reasons for creating a longer seven-year statute of limitations that is retroactive while simultaneously only applying the removal of presentment prospectively.[20] Additionally, the City notes that the same harsh result that <u>Lee</u> hypothesized would result by creating a retroactive statute of limitations but keeping presentment prospective already exists under Massachusetts law: the two-year presentment period is not tolled for a minor even though the statute of limitations is. Finally, Magistrate Judge Cabell's concern that certain classes of minors might be excluded from bringing suit is tempered—if not ameliorated—by application of the common law discovery rule, which applies to the presentment period. See <u>Magliacane v. City of Gardner</u>, 483 Mass. 842, 851 (2020).[21]

The result here is that Doe's claim arose prior to the effective date of the 2014 amendments. As set forth in the Complaint, the alleged harassment occurred in 1996. As noted above in connection with accrual of the Title IX claims, the negligence claim also arose at the time the alleged sexual harassment occurred in 1996.[22] Doe was therefore required to make presentment within 2 years (*i.e.*, 1998).[23] Where he failed to do so, Counts I-III should be dismissed for failure to comply with a condition precedent.

---

[20]    It is unclear whether these arguments were made to Judge Cabell for his consideration.

[21]    Magistrate Judge Cabell did not have the benefit of <u>Magliacane</u> when he issued his decision in <u>Lee</u>.

[22]    As noted above, "the presentment requirement of the [MTCA] must be met regardless of the age of the claimant." <u>George</u>, 394 Mass. at 44.

[23]    Even if this Court determines that Doe's claim is tolled until October 2021 (which the City disputes as a matter of the pleadings), presentment is still untimely because the letter would be due by October 2023.

**B.  Count I is Barred by Section 10(c) of the MTCA**.

Count I appears on its face to be duplicative of Count II. It alleges that the City failed to protect Doe from McNeil's alleged harassment. This claim is either an impermissible attempt to hold the City liable for McNeil's intentional tort—which is barred by Section 10(c) of the MTCA, see Titus v. Town of Nantucket, 840 F. Supp. 2d 404, 411 (D. Mass. 2011) (Gorton, J.)—or it is duplicative of Count II because the only way in which the City could fail to protect Doe from McNeil's alleged harassment is by means of negligent hiring, training, supervising, or retaining McNeil; those theories, however, are already asserted in Count II.

**C.  Counts I and II are Barred by Section 10(j) of the MTCA.**

Section 10(j) provides that the limited abrogation of sovereign immunity set forth in Section 2 shall not apply to:

> [A]ny claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, *including the violent or tortious conduct of a third person*, which is not originally caused by the public employer or any person acting on behalf of the public employer.

M.G.L. c. 258, § 10(j) (emphasis added). As the Appeals Court has previously noted, "[t]he principal purpose of this provision is 'to exclude liability for an act or failure to act to prevent or diminish certain harmful consequences. . . . Thus, there is immunity in respect to all consequences except where the condition or situation was originally caused by the public employer.'" Moore v. Town of Billerica, 83 Mass. App. Ct. 729, 731 (2013), *rev. denied*, 467 Mass. 1102 (2014). Whether Section 10(j) bars a particular claim is a question of law for the Court. See e.g., Klevan v. City of Newton, 97 Mass. App. Ct. 87, 90 n.8 (2020).

As the SJC held shortly after it was enacted, the principal purpose for Section 10(j) immunity is "to exclude liability for an act or failure to act to prevent or diminish certain harmful consequences. . . . Thus, there is immunity in respect to all consequences except where the

condition or situation was originally caused by the public employer." <u>Brum v. Town of Dartmouth</u>,

428 Mass. 684, 692 (1999). The SJC expressly cautioned against an expansive reading of the

"originally caused" requirement:

> It is clear . . . that § 10(j) was intended to provide some substantial measure of
> immunity from tort liability to government employers.  In light of this, we must not
> adopt an interpretation of the statute that construes the words "originally caused"
> so broadly as to encompass the remotest causation and preclude immunity in nearly
> all circumstances.

<u>Id</u>. at 694 (emphasis added). In <u>Kent v. Commonwealth</u>, the SJC described the dual requirements

of the "originally caused" requirement. 437 Mass. 312, 318 (2002). First, an "original cause" must

be "an affirmative act (not a failure to act) by a public employer that creates the 'condition or

situation' that results in harm inflicted by a third party." <u>Id</u>. (emphasis added). Second, the

affirmative act cannot be attenuated from the resulting injury; rather, it "must have materially

contributed to creating the specific 'condition or situation' that resulted in the harm." <u>Id</u>. at 319.

Count I fails to meet either of these two prongs.

Here, the "condition or situation" that allegedly resulted in "harmful consequences" – *i.e.*,

McNeil's alleged sexual harassment of Doe – were McNeil's unlawful (arguably criminal) acts,

not the City actions. This is consistent with how federal courts have interpreted the so-called

"originally caused" prong of 10(j) immunity. For example, in <u>Doe v. Old Rochester Regl. Sch.

Dist</u>., the district court rejected a plaintiff's attempt to "argue that [school officials] originally

caused the harmful condition or situation because they were aware that [a teacher] sexually

assaulted another female student in 1995 and took no corrective measures to limit his access to

female students." 56 F. Supp. 2d 114, 121 (D. Mass. 1999). The district court ruled that the

teacher's abuse was not "in the 'scope of his office or employment'" and the mere fact that "some

of the alleged abuse occurred on School District property does not mean that [the teacher's] acts

came within the scope of his employment—that is, that it was associated in any material way with

the work he was hired to perform or was motivated by a purpose to serve his employer." Id. Therefore, immunity applied. See id. The same is true here.

Additionally, the City's alleged negligent training and supervision cannot be the original cause because they are omissions, not affirmative acts. Such allegations "are all claims based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance." Armstrong v. Lamy, 938 F. Supp. 1018, 1044 (D. Mass. 1996) (failure of school officials to train, supervise, correct or control music teacher who sexually assaulted plaintiff held barred under Section 10(j)). See Old Rochester Regl. Sch. Dist., 56 F. Supp. 2d at 120 (school's failure to protect student from physical and sexual assault by teacher and coach held barred under Section 10(j)); Canty v. Old Rochester Regl. Sch. Dist., 54 F. Supp. 2d 66, 70–71 (D. Mass. 1999) (school district held immune under Section 10(j) for rape of high school student by coach); Doe v. D'Agostino, 367 F. Supp. 2d 157, 174–75 (D. Mass. 2005) (school held immune under Section 10(j) for sexual assault of fifth grade student by teacher); cf. Doe v. City of Fitchburg, 76 Mass. App. Ct. 1106, *3 (former Rule 1:28 unpublished decision) (2010) (school held immune under Section 10(j) for sexual assault of special needs student by wheelchair repairman hired by the school); Reguera v. Leduc, 2005 WL 2461973, *4 (Mass. Super. Ct. Aug. 22, 2005) (education collaborative held immune under Section 10(j) for sexual assault of special needs student in wheelchair by driver of handicapped van contracted by the collaborative).

The Complaint also fails to plausibly allege that the City's alleged negligent supervision/training "materially contributed to creating the specific 'condition or situation' that resulted in the harm." Kent, 437 Mass. at 319. The Complaint does not plausibly allege that the Town's alleged negligent supervision and/or training of McNeil materially contributed to creating

McNeil's alleged sexual harassment of Doe. Therefore, the Town is immune from suit with respect to Count I.

To the extent Doe would rely on the Appeals Court's recent decision in Theisz v. Mass. Bay Transp. Authy., 103 Mass. App. Ct. 822 (2024), *further review granted,* No. FAR-29760 (Apr. 5, 2024), such reliance is misplaced for several reasons. Principally, Theisz is wrongly decided[24] because it is inconsistent with three-decades of precedent SJC, disregards well-established canons of interpretation that require waivers of sovereign immunity to be construed narrowly, disregards SJC precedent requiring Section 10(j) to be construed broadly, is inconsistent with the Appeals Court's own precedent, and is inconsistent with overwhelming case law from Massachusetts and this Court. Moreover, the SJC's grant of further appellate review, while not dispositive, lends credence to the argument that the Appeals Court's decision was wrong, especially so where the SJC has declined further appellate review in cases where the Appeals Court upheld sovereign immunity, as occurred in Harrison. Separately, Theisz is simply inapplicable here because the facts are readily distinguishable. In Theisz, the bus driver had a long, documented history of misconduct and complaints against him all of which the MBTA was aware and for which the MBTA had disciplined him. Theisz, 103 Mass. App. Ct. at 823. The same is not true here; there are no plausible allegations that the City was aware that McNeil was sexually harassing Doe (let along other students), that complaints were made about McNeil's alleged sexual harassment, or that the City disciplined McNeil for alleged sexual harassment. Thus, even if Theisz was rightfully decided— which the City does not concede—it simply does not apply to this case.

---

[24]    This Court is not bound by an "intermediate appellate state court decisions construing state law" if "convinced that the highest court of the state would decide otherwise.'" Fossa, Ltd. v. I Jian Lin, 2017 WL 4374483, No. 16-CV-11914-LTS (D. Mass. Sept. 29, 2017) (Sorokin, J.) (quoting Blevio v. Aetna Cas. & Sur. Co., 39 F.3d 1, 3 (1st Cir. 1994)).

**D.  <u>Count II Alleging Negligent Hiring, Supervision, and Retention Fails to State a Claim Upon Which Relief May Be Granted</u>**.

A negligent hiring claims "requires . . . evidence that the employer knew or should have known that the employee who was hired was unfit" at the time of hiring. <u>Armstrong</u>, 938 F.Supp. at 1046. Here, the Complaint completely fails to plausibly allege facts to support that the City knew or should have known when it hired McNeil that he was unfit to serve as a teacher. Indeed, Count II itself does not even attempt to allege how McNeil was unfit at the time he was hired or any causal connection between McNeil's hiring and the alleged sexual harassment. In similar circumstances Judge Woodlock dismissed a negligent hiring claim at the pleadings stage. See <u>Doe v. Bradshaw</u>, 2013 WL 5236110 (D. Mass. Sept. 16, 2013) (Woodlock, J.) ("<u>Bradshaw I</u>"). In <u>Bradshaw I</u>, Judge Woodlock concluded that the complaint "fail[ed] to allege . . . that [the alleged assailant] had a criminal record or history of sexual assault, or that defendants were aware of any other information that would put them on notice of poor character, specifically as relevant to sexual abuse." <u>Id</u>. at * 12.[25]

Negligent supervision and retention requires a showing "that the [City became] aware or should have become aware of problems with [McNeil] that indicated [his] unfitness, and the [City] fail[ed] to take further action such as investigating, discharge or reassignment." <u>Helfman v. Ne. Univ</u>., 485 Mass. 308, 326 (2020). Here, the Complaint contains nothing more than the very "formulaic recitation of the elements of a cause of action" that the Supreme Court condemned in <u>Twombly</u>. <u>Twombly</u>, 550 U.S. at 555. Paragraph 25 alleges in bare and non-specific form that McNeil engaged in inappropriate conduct with other students, but no information is provided about when this allegedly took place, where it allegedly took place, with whom this allegedly occurred,

---

[25]    This conclusion was in connection with a holding that the Town of Mashpee was immune from suit under Section 10(j) of the MTCA. However, the analysis is equally applicable to the *prima facie* case for negligent hiring.

who within the City was aware, or how the City should have been aware of this alleged misconduct. Likewise, paragraph 26 attempts to allege—again, in bare and conclusory fashion—that the alleged misconduct occurred "over a long period of time" and was "readily observable to other City employees." But this is the exact type of "labels and conclusions, and a formulaic recitation of the elements of a cause of action" that no longer carries the day post-<u>Twombly</u>. Similarly, paragraphs 34-37 (under the heading of "Count II – Negligent Hiring, Supervision and Retention") do not set forth any factual allegations that would support a finding that the City was ever aware— or should ever have been aware—of any indication that McNeil was unfit to serve as a teacher. The Complaint does not allege that any student, teacher, parent, paraprofessional, or other City employee ever complained about McNeil.

In short, the Complaint fails to adequately allege that the City knew or should have known that McNeil was unfit to serve as a teacher—especially with respect to propensity to commit a sexual offense—either at the time that the City hired him or at some other time prior to McNeil's alleged harassment of Doe. Count II therefore should be dismissed.

**WHEREFORE**, the defendant, City of Woburn, hereby request that this Honorable Court certify two questions to the Massachusetts Supreme Judicial Court (as set forth above), enter orders dismissing all claims against the City, and enter any other relief that this Court deems equitable and just.

Respectfully submitted,

The Defendant,

CITY OF WOBURN,

By its Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ Jeffrey J. Trapani*
*/s/ Justin L. Amos*
_____
Jeffrey J. Trapani, BBO #661094
Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jtrapani@piercedavis.com
jamos@piercedavis.com

Dated: September 30, 2024

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on September 30, 2024.

*/s/ Justin L. Amos*
_____
Justin L. Amos