UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE NO. 3, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:24-cv-12153-JEK |
| | ) |
| CITY OF WOBURN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO CERTIFY AND TO DISMISS**

**KOBICK, J.**

Plaintiff John Doe No. 3 alleges in this action that he was sexually harassed and assaulted by William McNeil, Jr., a teacher employed by defendant City of Woburn, in the spring of 1996 while Doe was a student at Kennedy Middle School. Doe contends that the City negligently caused the assault by failing to protect its students from McNeil; failing to file reports on McNeil's prior misconduct, as required by state law; and negligently hiring, supervising, or retaining McNeil. He further contends that the City engaged in unfair educational practices through the sexually harassing acts of McNeil, in violation of M.G.L. c. 151C, § 2(g) and M.G.L. c. 214, § 1C, and was deliberately indifferent to the sexually hostile educational environment created by McNeil, in violation of Title IX of the Education Amendments of 1972. Pending before the Court is the City's motion to dismiss or, in the alterative, to certify certain questions of state law to the Massachusetts Supreme Judicial Court. The motion to dismiss will be granted in part, as to only the Title IX claim, which is time-barred. The remaining state law claims, which involve substantial questions of Massachusetts law, will be remanded to Middlesex Superior Court for resolution.

**BACKGROUND**

The following facts, which are drawn from the complaint, are assumed true on a motion to dismiss. *Parmenter v. Prudential Ins. Co. of Am.*, 93 F.4th 13, 18 (1st Cir. 2024).

Doe is a resident of Middlesex County who attended Kennedy Middle School in Woburn, Massachusetts from 1993 to 1996. ECF 1-2, ¶¶ 2, 11. During that time, McNeil was employed by the City as a math teacher and helped the school with its athletic programming. *Id.* ¶¶ 7, 12. McNeil is now deceased. *Id.* ¶ 6.

In March or April 1996, when Doe was thirteen years old, McNeil approached him about the possibility of playing on the varsity hockey team as a freshman the following year. *Id.* ¶¶ 13-14. McNeil suggested that Doe meet him at the school so that he could provide Doe with a workout plan to prepare for the team. *Id.* ¶ 14. Doe met with McNeil at the middle school on a Saturday to begin the workout plan, at which point McNeil informed Doe that he would need to be weighed before and after the workout to track his progress. *Id.* ¶¶ 15-16. McNeil insisted that Doe weigh himself in front of McNeil and wear only underwear or a towel while doing so. *Id.* ¶ 17. After the workout, McNeil also pressured Doe to shower in his presence, despite Doe's repeated statements that he would prefer to shower later. *Id.* ¶ 18. Doe attempted to remain out of McNeil's view during the shower. *Id.* ¶ 19. After the shower, McNeil again demanded that Doe weigh himself and instructed him to wear only his towel. *Id.* ¶¶ 19-20. During this weighing, McNeil tampered with the scale and told Doe that the added weight of the wet towel was interfering with the measurement. *Id.* ¶ 20. McNeil then slipped his hand under the towel and slid his hand between Doe's buttocks before removing the towel altogether, leaving Doe fully naked. *Id.* McNeil hovered over Doe and continued manipulating the scale while Doe stood naked on the scale. *Id.*

2

Doe recalls hearing from other students and teammates about similar incidents in which McNeil forced students to shower in his presence and assaulted students during weigh-ins. *See id.* ¶ 25. These assaults transpired "over a long period of time" and were "readily observable to other city employees." *Id*. ¶ 26. Although Massachusetts law imposed a duty to report such misconduct, no employees of the City reported McNeil. *Id.* ¶ 27.

Doe "attempted to avoid remembering" the 1996 incident involving McNeil. *Id.* ¶ 21. Twenty-five years later, in October 2021, Doe experienced a sudden and intense recollection of the assault when visiting Kennedy Middle School with his children for a Halloween event. *Id.* He was hit with an anxiety attack and experienced the same panic he had felt during the 1996 incident. *Id.* Following this recollection, Doe suffered repeated flashbacks of the assault, which spurred him to seek counseling. *Id.* ¶¶ 22-23. He was diagnosed with post-traumatic stress disorder, anxiety, and depression related to the sexual assault, and he continues to need mental health treatment for these conditions today. *Id.* ¶¶ 23-24. Doe contends that he was unable to understand that McNeil's misconduct had caused him severe psychological harm until his recollection of the experience in October 2021. *Id.* ¶ 29.

Doe filed this action against the City in Middlesex Superior Court in June 2024. ECF 1-2. His complaint asserts claims for negligence (Count I); negligent hiring, supervision, and retention (Count II); negligent infliction of emotional distress (Count III); unfair educational practices under M.G.L. c. 151C, § 2(g) and M.G.L. c. 214, § 1C (Count IV); and deliberate indifference toward a sexually hostile educational environment, in violation of Title IX, 20 U.S.C. § 1681 *et seq.* (Count V). The City removed the case to this Court in August 2024, ECF 1, and then moved to dismiss all claims or to certify two questions of state law, each pertaining to Count IV, to the Supreme Judicial

Court, ECF 11. After Doe opposed that motion and the City filed a reply, the Court held a hearing and took the motion under advisement. ECF 13, 16, 20.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted.'" *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Dismissal of a claim based on a statute of limitations defense is appropriate only "when the pleader's allegations 'leave no doubt that an asserted claim is time-barred.'" *Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir. 2010) (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)).

## DISCUSSION

### I.  Doe's Title IX Claim Is Time-Barred.

The City first contends that Doe's claim under Title IX, 20 U.S.C. § 1681, is untimely. When a federal cause of action, like Title IX, has no specified statute of limitations, courts typically apply the most analogous state statute of limitations. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987), *partially superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-82 (2004). For Title IX claims, like claims under 42 U.S.C. § 1983, the most

analogous statute of limitations is the forum state's general statute for personal injury actions. *Cf. Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (instructing courts to select the state's general personal injury statute of limitations for § 1983 claims); *see also King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015) ("While this court has not yet considered the appropriate limitations period for Title IX claims, every other circuit to have considered the matter in a published opinion has concluded that Title IX is subject to the same limitations period as § 1983."); *Doe v. Brown Univ.*, 43 F.4th 195, 205 n.6 (1st Cir. 2022) (although the First Circuit has not yet decided which statute of limitations governs Title IX claims, district courts in the Circuit have applied the forum state's personal injury limitations period). The general limitations period for personal injury claims in Massachusetts, set by M.G.L. c. 260, § 2A, is three years.

The next question is when Doe's Title IX claim accrued. The City contends that the claim accrued in 1996, when McNeil allegedly assaulted Doe, and when Doe knew that McNeil's actions were wrong and harmful. Title IX claims follow the forum state's tolling rules, *see Czerwienski v. Harvard Univ.*, 666 F. Supp. 3d 49, 78 (D. Mass. 2023) (collecting cases), and Massachusetts tolls the statute of limitations for personal injury claims until the plaintiff turns eighteen, *see* M.G.L. c. 260 § 7. Thus, the City argues, Doe's Title IX claim accrued in 1996; its limitations period started running in 2001, when he turned eighteen years old; and the limitations period expired three years later, in 2004. Doe counters that, pursuant to the discovery rule, his claim did not accrue until October 2021, when he became aware that McNeil's misconduct had caused him severe psychological harm. On this basis, Doe maintains that his claim is timely, even though the claim was brought more than twenty-eight years after the events described in the complaint.

To identify when Doe's Title IX claim accrued, the Court must first determine the general rule for accrual of Title IX claims based on deliberate indifference to sexual harassment. The

accrual of Title IX claims is a matter of federal law. *See Rivera Fernandez v. Chardon*, 648 F.2d 765, 767 (1st Cir. 1981) (applying the general rule that "[w]hen the cause of action accrues . . . is a question of federal law"), *rev'd on other grounds*, 454 U.S. 6 (1981); *Nieves v. McSweeney*, 241 F.3d 46, 52 (1st Cir. 2001) ("[T]he question of when a cause of action accrues in a civil rights case is a matter of federal law."); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1215 (10th Cir. 2014) (looking to federal law to determine accrual of Title IX claim). While the First Circuit has not said whether the discovery rule applies to Title IX claims, it has applied the rule to § 1983 claims, *see Ouellette v. Beaupre*, 977 F.3d 127, 136 (1st Cir. 2020), and other courts have applied the rule to Title IX claims, *see, e.g., Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698-701 (6th Cir. 2022); *Czerwienski*, 666 F. Supp. 3d at 79. This Court will likewise assume the discovery rule applies to Title IX claims.

Under the discovery rule, a claim does not accrue until the plaintiff is, or should be, "aware of both the fact of his or her injury and the injury's likely causal connection with the putative defendant." *Ouellette*, 977 F.3d at 136. The rule's application to Doe's claim turns on what constitutes an injury under Title IX.[1] The Supreme Court has emphasized that, for the purposes of claim accrual, the injury in discrimination cases materializes at "'the time of the *discriminatory acts*, not [at] the time at which the *consequences* of the acts became most painful.'" *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (quoting *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)); *accord Shervin v. Partners Healthcare Sys., Inc.*, 804 F.3d 23, 33 (1st Cir. 2015)

---

[1] Pursuant to the discovery rule, accrual can also be delayed until the plaintiff discovers the injury's "likely causal connection" to the defendant. *Ouellette*, 977 F.3d at 136; *see also Snyder-Hill*, 48 F.4th at 704-05; *Czerwienski*, 666 F. Supp. 3d at 79-80. In this case, the alleged causal connection is the school's deliberate indifference to McNeil's sexual harassment. Since Doe does not claim that he was unaware of the school's indifference prior to his 2021 flashback, and indeed alleges otherwise, this aspect of the discovery rule does not delay accrual of his claim. *See* ECF 1-2, ¶¶ 25-26.

(applying this principle to the accrual of discrimination claims under federal and Massachusetts law). The same principle exists in civil rights cases brought under § 1983. *See Wallace v. Kato*, 549 U.S. 384, 391 (2007); *Martin v. Somerset Cnty.*, 86 F.4th 938, 944 (1st Cir. 2023) ("[I]n section 1983 cases, '[the] plaintiff is deemed to know or have reason to know [of the injury] at the time of the act itself and not at the point that the harmful consequences are felt.'" (second and third alterations in original) (quoting *Morán Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st Cir. 2008))). In accordance with this principle, a Title IX injury can occur, and a Title IX claim can accrue, before the harmful consequences of the discrimination are most acutely felt. "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391.[2]

Applying these principles, the discovery rule delays accrual of Title IX claims based on sexual harassment only up to the point in time when the plaintiff discovers the abusive environment and institutional responsibility for it, not when the plaintiff discovers that he has been psychologically injured. In *Varnell*, for example, the plaintiff argued that her Title IX claim based on sexual abuse she experienced as a teenager did not accrue until years later, when she spoke to a spiritual counselor about the abuse, because until that point she "could not appreciate the damage

---

[2] A Title IX injury based on sexual harassment need not involve psychological harm at all. *See Snyder-Hill*, 48 F.4th at 702 n.81 (noting in the context of Title IX that "injury" and "harm" are not always synonymous, and that "injury" can mean "[t]he violation of another's legal right" (alteration in original) (quoting Black's Law Dictionary (11th ed. 2019))). In sexual harassment cases, the injury is being "subjected to harassment severe enough to compromise the victim's employment or educational opportunities." *Wills v. Brown Univ.*, 184 F.3d 20, 26 (1st Cir. 1999). While "the presence . . . of psychological harm" is certainly "relevant" to determining whether a sufficiently hostile environment has been created, it is not "required." *Brown v. Hot, Sexy and Safer Prods., Inc.*, 68 F.3d 525, 540 (1st Cir. 1995) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *cf. Harris*, 510 U.S. at 22 (recognizing that a hostile work environment does not have to be "psychologically injurious" to be barred by Title VII).

done to her." 756 F.3d at 1215. Even though the plaintiff "may not have known how harmful [the] abuse was," the Tenth Circuit held that her Title IX claim accrued at the time of the abuse, because that was when she knew "all the facts necessary to sue and recover damages." *Id.* at 1216; *see also Doe 1 v. Nat'l Collegiate Athletic Ass'n*, No. 22-cv-01559-LB, 2023 WL 105096, at *12 (N.D. Cal. Jan. 4, 2023) (the discovery rule did not apply to plaintiffs' sexual harassment claims because "plaintiffs knew about the wrongful conduct when it occurred"). In contrast, the discovery rule *can* delay accrual of a Title IX claim when the plaintiff is not aware that he or she was abused in the first place, either because the memory of the abuse was repressed, *see, e.g.*, *Sharon F. v. Martin*, No. 21-cv-02756, 2022 WL 874666, at *2 (N.D. Ill. Mar. 24, 2022), or because the plaintiff misunderstood the nature of the abuser's actions, *see, e.g.*, *Snyder-Hill*, 48 F.3d at 706 (applying discovery rule when plaintiffs were unaware they were abused because the abuser gave "pretextual medical explanations for his abuse"). In these cases, even though the plaintiffs were exposed, on the basis of sex, to an environment severe enough to interfere with their education, they were not aware that they had been so exposed, and thus could not be aware of the school's role in creating that sexually hostile environment, until they realized that they had experienced sexual abuse.

Doe is not like the plaintiffs who were unaware of abuse they had experienced. He does not deny, and it is clear from the face of the complaint, that he was aware that McNeil's actions were inappropriate at the time they occurred. He acknowledges that he "attempted to remain out of view" of McNeil and that he had experienced a "panicked feeling" and "symptoms" of anxiety "while standing on the scale" during the incident. ECF 1-2, ¶¶ 19, 21. Rather than repressing or misunderstanding what occurred, he "attempted to avoid remembering the sexual assault," and he also heard at the time about similar assaults from other students. *Id.* ¶¶ 21, 25. These facts all make clear that Doe understood the facts giving rise to his Title IX claim at the time of the abuse. Doe's

8

contention that he did not understand that the abuse had caused him psychological harm does not delay accrual of his claim, as Title IX claims do not require psychological harm in order to accrue. Since his cause of action accrued while he was a student, and the statute of limitations was then tolled until his eighteenth birthday, Doe's Title IX claim has been time-barred since approximately 2004. The Court will therefore grant the City's motion to dismiss as to Count V.

## II.     Doe's State Law Claims Will Be Remanded.

Doe's remaining claims are all founded on state law. Counts I through III are negligence claims, and Count IV arises under M.G.L. c. 151C, § 2(g), and M.G.L. c. 214, § 1C. ECF 1-2, ¶¶ 30-46. The City invoked supplemental jurisdiction for these claims under 28 U.S.C. § 1367(a) when it removed the lawsuit to this Court on federal question grounds under 28 U.S.C. § 1331. ECF 1, ¶¶ 4-5. But this Court "may decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction" or when a state law claim "raises a novel or complex issue." 28 U.S.C. §§ 1367(c)(1), (c)(3). The court must also consider "interests of fairness, judicial economy, convenience, and comity." *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998).

These factors counsel against the exercise of supplemental jurisdiction over Doe's state law claims. First, "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Rivera-Díaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387, 392 (1st Cir. 2014) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Since the Court has determined, at this "early stage in the litigation," that the only federal claim in this case is time-barred and must be dismissed, the "balance of competing factors . . . weigh[s] strongly in favor of declining jurisdiction." *Camelio*, 137 F.3d at 672; *see Swartz v. Sylvester*, 53 F.4th 693, 703 (1st

Cir. 2022) (affirming district court's decision not to exercise supplemental jurisdiction over state law claim after entering summary judgment on federal law claim); *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 36-37 (1st Cir. 2020) (same after affirming dismissal of federal law claims).

Second, out of concern for comity, a district court should avoid "'[n]eedless decisions of state law,'" *Lambert v. Fiorentini*, 949 F.3d 22, 29 (1st Cir. 2020) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)), particularly when "'a substantial question of state law'" is involved, *id.* (quoting *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017)). And Doe's state-law claims involve novel, complex, or unsettled questions of Massachusetts law. The viability of his state-law sexual harassment claim hinges on (1) whether the discovery rule applies to the limitations period in M.G.L. c. 214, § 1C and, if so, when the limitations period starts running; (2) whether the City's sovereign immunity has been waived by either M.G.L. c. 151C or M.G.L. c. 214, § 1C; and (3) whether the City can be held strictly liable under the statutes. The City has moved to certify the latter two questions to the Supreme Judicial Court, contending that these questions "remain open under Massachusetts law." ECF 12, at 1. The interest of comity thus counsels in favor of allowing Massachusetts courts to resolve these questions in the first instance, though in the normal course of litigation rather than through immediate certification to the Supreme Judicial Court.

Doe's negligence claims are brought under the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, §§ 1-14. The City contends that Counts I through III are barred because Doe failed to present them to the City in compliance with M.G.L. c. 258, § 4; that Count I is barred because the City has immunity under M.G.L. c. 258, § 10(c); that Counts I and II are barred because the City has immunity under M.G.L. c. 258, § 10(j); and that Count II is insufficiently pleaded. These

arguments raise nontrivial questions of state law that are best addressed by the state court. For example, as Doe did not make written presentment of his negligence claims as required by M.G.L. c. 258, § 4, the viability of these claims depends on the applicability of the 2014 amendment to M.G.L. c. 258, § 4, which removed the presentment requirement for "a civil action against a public employer which relates to the sexual abuse of a minor." Mass. St. 2014, c. 145, § 1. The City further argues, but Doe disputes, that Counts I and II of the complaint are barred by § 10(j) of the MTCA, which preserves immunity for public employers for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." M.G.L. c. 258, § 10(j). The Supreme Judicial Court recently noted that "the language of § 10 (j) 'presents an interpretive quagmire.'" *Theisz v. Massachusetts Bay Transp. Auth.*, 495 Mass. 507, 515 (2025) (quoting *Brum v. Town of Dartmouth*, 428 Mass. 684, 692 (1999)). Given that the extent of § 10(j)'s application to Counts I and II depends on "novel [and] sensitive" issues of state law, these claims are also best resolved in state court. *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 35 (1st Cir. 2018). Accordingly, the Court will decline to exercise supplemental jurisdiction over Doe's remaining state law claims.

## CONCLUSIONS AND ORDERS

For the foregoing reasons, the City's motion to dismiss, ECF 12, is GRANTED in part and DENIED in part without prejudice. Count V of the complaint is dismissed. Counts I through IV are REMANDED to Middlesex Superior Court.

SO ORDERED.

Dated: April 29, 2025

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE